UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CRIMINAL NO.: SA-14-CR-926-RCL |
| ) | |
| VASCULAR SOLUTIONS, INC., (1) and ) | |
| ) | |
| HOWARD ROOT, (2) ) | |
| ) | |
| Defendants. ) | |

## UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE EVIDENCE OF WITNESS IMMUNITY AGREEMENTS

The jury's obligation to evaluate witness credibility is an indisputable and time-honored principle of federal law. Notwithstanding this principle, Defendants Vascular Solutions, Inc. and Howard Root seek to withhold from the jury relevant and probative evidence of witness credibility. Defendants move to exclude evidence of immunity orders obtained by witnesses who will testify at trial, and Defendants justify their motion by claiming that they only plan to impeach "certain" witnesses based on their having received immunity. Defendants' argument provides no basis for selective exclusion of this probative evidence. The immunity orders are relevant to credibility determinations that the jury must undertake, and their relevance is independent of Defendants' strategic decision to impeach or not to impeach certain witnesses. Nor is there any basis for concluding that reference at trial to witness immunity will unfairly prejudice Defendants. Defendants' motion *in limine* should be denied.

**ARGUMENT**

I. **Witness Immunity Is Relevant to Evaluating Credibility and Critical to the Jury's Ability to Perform Its Fact-Finding Role.**

Defendants argue that, because they only want to impeach "certain" witnesses based on the witnesses having immunity agreements,[1] any reference at trial to immunity is irrelevant and should be held inadmissible.  The United States expects Defendants' argument to play out in the following way at trial:  Defendants will impeach certain former employees who are cooperating with the Government, but will at the same time prevent the jury from learning that certain current employees demanded immunity and would not have testified absent an order compelling their testimony.  Defendants' selective and misleading approach to fact-finding is unsupported in the law and should be rejected.

Specifically, Defendants' argument misunderstands why an immunity order (or other similar order or agreement concerning a witness's testimony, such as a negotiated immunity agreement or plea agreement) is relevant in a criminal proceeding.  An immunity order is not relevant solely for purposes of impeachment.  To the contrary, the existence of an immunity order, immunity agreement, or plea agreement is relevant to the overall credibility of a testifying witness.  *See United States v. Jimenez-Diaz*, 659 F.2d 562, 565 (5th Cir. 1981) (fact that witness was "testifying under a grant of immunity was plainly relevant to [the witness's] credibility"); *United States v. Johnson*, 437 F.3d 665, 671-72 (7th Cir. 2006) (affirming trial court's decision permitting government, on direct examination of witness, "to introduce the court's order granting [the witness] immunity and compelling his testimony" as immunity was relevant to witness's

---

[1] Defendants' motion generally refers to "immunity agreements," but the witness immunity at issue actually comes from immunity orders.  The United States notes this discrepancy for only for the sake of accuracy; as demonstrated below, both immunity orders and immunity agreements are relevant and admissible for purposes of evaluating witness credibility.

credibility); *United States v. McNeill*, 728 F.2d 5, 14 (1st Cir. 1984) (holding that testimony, concerning court's immunity orders issued to government witnesses, was properly elicited by prosecutor and relevant to jury's credibility determination); *United States v. Higgs*, 713 F.2d 39, 43 (3d Cir. 1983) ("Evidence that government witnesses have been granted immunity and/or leniency for their cooperation is clearly relevant on the issue of their credibility."); *United States v. Silverman*, 430 F.2d 106, 124 (2d Cir. 1970) (concluding that grants of immunity were relevant to jury's evaluation of witness credibility and finding no error in trial court's "permitting the government to bring out the grants of immunity . . . on its direct examination of the witnesses"); *United States v. Livoti*, 25 F. Supp. 2d 390, 394 (S.D.N.Y. 1998) (holding that government was entitled to question witness about witness's demand to obtain immunity because "grant of immunity was relevant to the jury's evaluation of the witness's credibility").[2]

Significantly, an immunity order is relevant to a witness's credibility irrespective of whether the defense seeks to impeach the witness. Indeed, Defendants' argument to the contrary has been rejected at the appellate level. In *United States v. McNeill*, 728 F.2d 5 (1st Cir. 1984), the district court entered orders granting two witnesses immunity and compelling them to testify. The defendant moved to prevent the government from eliciting testimony concerning these grants of immunity "stating that he would not impeach the witnesses' credibility on cross-examination." *Id.* at 14. The district court denied the defendant's motion and the court of appeals affirmed:

---

[2] The court in *United States v. Livoti* distinguished between, on the one hand, the government questioning a witness about demanding a grant of immunity and, on the other, questioning a witness about invoking the Fifth Amendment privilege against self-incrimination. The court held the former permissible as it is relevant to the jury's credibility determination, but found the latter impermissible. *See Livoti*, 25 F. Supp. 2d at 394. The United States does not intend to ask questions concerning any witness's invocation of the Fifth Amendment.

3

> We hold that the trial court correctly permitted the government to elicit this information. Rule 607 of the Federal Rules of Evidence provides, "The credibility of a witness may be attacked by any party, including the party calling him". In *United States v. Winter*, 663 F.2d 1120, 1134 (1st Cir. 1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983), we held that evidence of an immunity agreement may be introduced on direct examination. Although the defendant in *Winter* had made clear his intention to impeach the credibility of the witness on cross-examination, whereas here [defendant] stated that he would not do so, <u>this factual distinction does not diminish the benefit to the jury of having before it information relevant to its task of judging credibility and weighing testimony</u>. *See United States v. Craig*, 573 F.2d 513, 519 (7th Cir. 1978). <u>The fact of immunity and compulsion orders aids the jury function regardless of whether defendant intended to attack the credibility of the witnesses</u>.

*Id.* (emphasis added).[3]

The role of the jury in this case is to find the facts. In order to perform its role, the jury is obligated to evaluate the credibility of testifying witnesses. "One of the oldest established rules of Anglo-American jurisprudence is that the jury is the arbiter of credibility of witnesses." *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976). The existence *vel non* of immunity is relevant to and probative of a testifying witness's motivations, incentives, and candor—all essential considerations for a jury when performing its role of evaluating witness credibility.

However, under Defendants' proposed approach, <u>Defendants</u>—not <u>jurors</u>—would be the arbiters of this credibility evidence. Defendants would be empowered to limit the jury's access to this evidence on an *ad hoc* and purely strategic basis. For example, before a government witness took the stand—particularly a witness who Defendants believe may be more favorable or

---

[3] Other courts have reached similar conclusions. *See United States v. LeFevour*, 798 F.2d 977, 984 (7th Cir. 1986) (holding that grant of immunity is "relevant to putting the essential circumstances of these witnesses' testimony before the jury <u>even if there was no expectation of cross-examination</u>") (emphasis added); *see also United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 666 (3d Cir. 2000) ("[W]e are satisfied that the government may seek to introduce a witness's guilty plea and/or plea agreement even in the absence of a challenge to the witness's credibility."); *United States v. Gaev*, 24 F.3d 473, 477-78 (3d Cir. 1994) ("While plea agreements have often been admitted in response to actual or anticipated attacks on a witness's credibility, an attack is not always necessary to justify their introduction.").

neutral to the defense—Defendants could "agree" not to impeach the witness, and thereby prevent the jury from knowing that the witness had received immunity. By the same token, for a witness that Defendants believe will be more damaging to their case, Defendants could state their intention to impeach the witness and thereby allow the jury to learn of the witness's immunity. Either way, the end result is censorship of relevant credibility evidence.

Moreover, Defendants' proposal of selectively admitting immunity evidence only as to "certain" witnesses would affirmatively mislead the jury. If a set of witnesses has received grants of immunity, and the jury hears that "subset A" of those witnesses received immunity but hears nothing about whether "subset B" received immunity, the implication is that "subset B" <u>did not receive immunity</u>. Defendants' piecemeal approach could thereby skew the trial evidence in a manner that is inconsistent with the underlying facts.

Defendants cite cases in support of the claimed proposition that witness immunity is probative solely for impeachment purposes, but the cases do not support that proposition. For example, the court in *United States v. Milstead*, 671 F.2d 950 (5th Cir. 1982) upheld a trial court's prohibition on referencing a witness's immunity agreement in a <u>separate and unrelated case</u>. *See id.* at 952-53. Unlike *Milstead*, the immunity orders here arise out of the case being tried and bear directly on the credibility of the witnesses who will testify. Further, the *Milstead* court never opined that immunity agreements are relevant <u>only</u> for impeachment. Indeed, the district court in *Milstead* allowed into evidence the testifying witness's plea agreement in the case being tried. *See id.* at 953.[4]

---

[4] Defendants also cite *United States v. Parker*, 586 F.2d 422 (5th Cir. 1978) and other cases for the purported rule that the government may introduce evidence of an immunity agreement "only in anticipation of impeachment by a defendant." Mot. in Lim., Docket No. 186 at 3. Defendants mischaracterize these cases, as none of them concerns (let alone creates) such a rule of admissibility. The rulings in these cases provide only that it is a "permissible" tactic for the

In short, the immunity orders at issue are relevant and probative evidence of witness credibility, and Defendants' argument to the contrary should be rejected.

## II.     Testimony Regarding Immunity Is Not Unfairly Prejudicial.

Defendants argue that, even if relevant, reference to immunity agreements should be excluded because of the danger of unfair prejudice.  Defendants are wrong.  Under Rule 403, "[a] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  When applying this standard, courts bear in mind that relevant evidence is virtually always prejudicial to one party; the question is whether such evidence is so unfairly prejudicial, when balanced against its probative value, that it must be excluded.  *See United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993).

Defendants do not meet this standard.  To be sure, reference to a witness's immunity could suggest wrongdoing on the part of the witness, and could even suggest wrongdoing on the part of persons or entities associated with the witness.  However, this does not rise to the level of "unfair prejudice" required for exclusion under Rule 403.  Notably, in all of the cases cited *supra* addressing the admissibility of immunity or plea agreement evidence, the courts allowed the testimony into evidence and, in doing so, implicitly found that such testimony was not unfairly prejudicial or otherwise excludable under Rule 403.  *See* pp. 2-4, *supra*.  At most, all that could be warranted here is a limiting instruction; several courts have found that limiting instructions

---

government to disclose immunity on direct in anticipation of cross-examination.  *See United States v. Parker*, 586 F.2d 422, 429 (5th Cir. 1978); *United States v. Hedman*, 630 F.2d 1184, 1198 (7th Cir. 1980).  None of the cases hold that such evidence would be admissible only in anticipation of impeachment, as Defendants contend.

adequately cure any potential prejudice that could arise under like circumstances. *See Hedman*, 630 F.2d at 1199 (concluding that witness testimony concerning grant of immunity was properly admitted, particularly in light of instructions given by trial court); *United States v. Marroquin*, 885 F.2d 1240, 1247 (5th Cir. 1989) (finding that trial court properly allowed testimony concerning witness's plea agreement where testimony was accompanied by limiting instruction that agreement was to be considered only as evidence of credibility).

Defendants' reliance on *In re Urethane Antitrust Litigation*, No. 04–1616–JWL, 2013 WL 2097346 (D. Kan. July 26, 2013) does not aid their cause. That case was a civil class action in which the defendant sought to introduce evidence that a witness had entered into an immunity agreement with the Department of Justice in a separate and distinct proceeding. The court excluded evidence of the agreement because it found no "link" between the agreement and the witness's credibility at trial. *Id.* at *13. This is easily contrasted with the case before the Court, where the immunity orders arose in the same matter (and concern the same underlying facts) now pending before the Court. Further, the *In re Urethane* court found the proffered evidence inadmissible under Rule 403 because it would unduly prolong the trial, and was being offered to show the witness "had acted improperly in seeking an immunity agreement." *Id.* This is not the case here: immunity evidence will not prolong this trial, and the United States does not intend to use this evidence in an unfair manner.

Lastly, there is no basis for Defendants' assertion that reference at trial to an immunity agreement constitutes impermissible "vouching." Indeed, courts have rejected this very argument and held that a prosecutor's reference to witness immunity on direct, without more, does not amount to vouching. *See, e.g.*, *United States v. Tate*, 915 F.2d 400, 401-02 (8th Cir. 1990) (holding that prosecutor, by merely eliciting testimony from witness concerning immunity

7

agreement with government, did not engage in vouching).  This Court should not exclude relevant and probative testimony on the basis of Defendants' unsupported and anticipatory allegation that vouching may occur.

## **CONCLUSION**

The Court should deny Defendants' motion.

          **RICHARD L. DURBIN, JR.**
          UNITED STATES ATTORNEY

By:     /s/
        BUD PAULISSEN
        Assistant United States Attorney
        Tx. Bar No. 15643450
        601 N.W. Loop 410, Suite 600
        San Antonio, TX  78216
        (210)384-7025

        TIMOTHY T. FINLEY
        Trial Attorney
        Consumer Protection Branch
        U.S. Department of Justice
        D.C. Bar No. 471841
        450 Fifth Street, N.W.
        Sixth Floor, South
        Washington, D.C. 20001
        202-307-0050

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2016, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such to all counsel to all parties listed as ECF registrants as authorized by this Court's Local Rules and its Administrative Policies and Procedures for Electronic Filing.

                By:     /s/
                          BUD PAULISSEN